**Eve BRUNEAU, a Minor, By and Through her Guardian ad litem, Pat SCHOFIELD, Plaintiff,**

v.

**SOUTH KORTRIGHT CENTRAL SCHOOL DISTRICT, Lynda H. Race, William Parker, South Kortright School Board, Defendants.**

**No. 94–CV–0864.**

United States District Court, N.D. New York.

July 25, 1996.

**26.** *See, supra* n. 22.

**27.** *See supra* § II., A., 2.

Steel, Bellman, Ritz & Clark, New York City, for Plaintiff; Merrick T. Rossein, of counsel.

Coughlin & Gerhart, L.L.P., Binghamton, New York, for Defendants; Frank W. Miller, of counsel.

## MEMORANDUM, DECISION AND ORDER

McAVOY, Chief Judge.

## I. BACKGROUND AND FACTS

The Plaintiff, Eve Bruneau, was a student in the sixth grade at South Kortright Central School District. Pat Schofield, the Plaintiff's mother, was appointed her guardian *ad litem* for the purposes of this suit by this Court's Order dated December 22, 1994. The Defendants are: South Kortright Central School (hereinafter "SKCS"), a public school which receives Federal financial assistance; Lynda Race, an assistant superintendent of the school; William Parker, the Plaintiff's former sixth grade teacher; and the South Kortright Central School Board.

### i. Procedural Background

The Plaintiff's original claim, filed on July 13, 1994, asserted a cause of action against the Defendants for a violation of 20 U.S.C. § 1681 (hereinafter "Title IX"), 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. On September 14, 1994, the Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or alternatively for summary judgment Pursuant to Fed.R.Civ.P. 56. In an Order dated December 22, 1994, this Court, *inter alia:* (1) granted the Defendants' motion to dismiss the Title IX claims against the individual Defendants Mr. Parker, Mrs. Race and Mr. Thompson; (2) denied the Defendants' motion to dismiss the Title IX claims against SKCS and the SKCS Board of Education; (3) denied the Defendants' motion to dismiss the 42 U.S.C. § 1983 claims; (4) granted the Defendants' motion to dismiss the 42 U.S.C. § 1983 claim against SKCS and the SKCS Board only in regard to school policy and custom but granted the plaintiff 30 days in which to amend her complaint; (5) granted the Defendants' motion to dismiss the 42 U.S.C. § 1983 claims against individual Defendant Mr. Thomson; and (6) denied the Defendants' motion for summary judgment in its entirety.

On December 27, 1994, the Plaintiff filed her Amended Complaint. The Plaintiff asserts that Title IX supports a claim where supervising authorities, such as faculty members, administrators or school board members, knowingly fail to act to remedy a sexually hostile learning environment created by fellow students. The Plaintiff claims that a Title IX claim should be governed by the same judicial standards applicable to 42 U.S.C. § 2000e-2(a) (hereinafter "Title VII") relating to an employer's toleration of a sexually hostile working environments created by employees.

On June 6, 1996, the Defendants moved for summary judgment against the Plaintiff's Amended Complaint. They contend that Title VII analysis is not applicable to a Title IX claim where the sexually hostile learning environment was created by a student's peers.

### ii. The Plaintiff's Case

The Plaintiff alleges that she and other girls in her class were subjected to verbal and physical sexual harassment beginning in September, 1993, until she was forced to transfer from SKCS on March 1, 1994. The Plaintiff claims that such sexual harassment made her feel unsafe and depressed. Bruneau Aff'd at 1–2. Additionally, the harassment created an intimidating, abusive and hostile learning environment which interfered with her education. *Id.* The Plaintiff and other girls were often referred to as "lesbian", "prostitute", "retard", "scum", "bitch", "whore" and "ugly dog faced bitch." Plaintiff's Counter–Statement of Disputed Material Facts at 2. The physical harassment included the boys; snapping the girls' bras, running their fingers down the girls' backs, stuffing paper down the girls' blouses, cutting the girls' hair, grabbing the girls' breasts, spitting, shoving, hitting and kicking. Bruneau Aff'd. at 1–5.

The Plaintiff alleges that Mr. Parker and Ms. Race were aware of the sexually harass-

ing conduct and failed to take any action to stop it. *Id.* at 5. At a meeting on or about November 16, 1993, the Plaintiff alleges that all the girls in the class, including herself, informed Mr. Parker of the sexual harassment. *Id.* Additionally, the Plaintiff contends that in meetings on November 3, 1993, November 19, 1993, and March 25, 1994, the Plaintiff and her parents brought the sexually harassing conduct to the attention Mr. Parker, Mrs. Race, and other school officials. Schofield Aff'd. at 3, 5, Bruneau Aff'd. at 9. Ms. Schofield alleges that she specifically informed Mr. Parker that she felt that the boys behavior constituted sexual harassment. *Id.* at 3. Allegedly Mr. Parker responded by telling her that he believed that the boys conduct was normal flirting and teasing and that "Eve was so beautiful that the guys would be all over her in a couple of years." *Id.* at 4. The Plaintiff claims that the boys sexually harassing conduct continued despite many specific reports to school employees. Bruneau Aff'd. at 6.

Additionally, the Plaintiff alleges that Mr. Parker favored his male students by assisting, inviting, and encouraging them to participate in certain projects and activities in the classroom while not inviting or encouraging, even discouraging, the girls participation. *Id.* at 8–9. As examples, the Plaintiff recounts that Mr. Parker assisted only the boys in making Indian headdresses and turkey calls. When the Plaintiff asked if she could participate in the activity she states that Mr. Parker handed her a straw and told her to "suck on this instead." *Id.* Additionally, the Plaintiff asserts that the boys' closet had more storage space than the girls and that Mr. Parker brought in hunting, sports, and gun magazines for the boys but nothing for the girls. *Id.* at 9. Mrs. Schofield informed Mrs. Race on November 19, 1993, that she felt that Mr. Parker's room was male-oriented. Schofield Aff'd. at 7.

### iii. The Defendants' Case

The Defendants contend that neither the Plaintiff nor her parents gave the school adequate notice of the alleged sexual harassment. Defendant's Memorandum of Law at 8. The Defendants do not contest that Mrs. Schofield made two verbal complaints to Mr. Parker concerning alleged peer sexual harassment on or about November 3, 1993, and November 10, 1993. Defendants' Statement of Uncontested Facts at ¶ 12. Yet, each complaint allegedly related to the same incident. That incident involved a male student calling the Plaintiff a "dog faced bitch." *Id.*

Mr. Parker contends that, other than the Plaintiff's complaint filed with this Court, he has "never heard Eve Bruneau, Pat Schofield, or any other student or parent allege that there was sexual harassment occurring in my class room." Parker Aff'd at 11, 15. He did not observe any sexual activity between any children and does not believe that sexual harassment occurred in his classroom. *Id.* at 15–16. Mr. Parker contends that, "[t]here was no situation of which I am aware where I did not address a student's misbehavior when it was brought to my attention." *Id.* at 16. Additionally, during the November 16, 1993, meeting neither the Plaintiff nor the other girls in his class informed him that they felt they were being sexually harassed. *Id.* Mr. Parker recounts that the only episodes of mistreatment by the male classmates alleged by the girls included not allowing them to play on the playground, the boys not participating with them in various playground activities, pushing, and shoving. *Id.* Mr. Parker stated that, "things such as pushing and shoving, horseplay and the like, are typical sixth grade behavior." *Id.*

The Defendants do not contest that Mrs. Schofield made complaints to Mrs. Race concerning alleged sexual harassment on November, 1993, and March 25, 1994. Plaintiff's Statement of Uncontested Facts ¶ 13. It should be noted that the March 25, 1994, complaint was made only one day prior to the Plaintiff's transfer from SKCS. *Id.* Additionally, Mrs. Race denies receiving any complaint from the Plaintiff concerning any acts of alleged sexual harassment at any time during the 1993–1994 school year until the March 25, 1994, meeting. Race Aff'd. at ¶¶ 17, 20. Mrs. Race claims that her November, 1993, meetings with Mrs. Schofield were primarily concerned with the school district's discontinuance of the accelerated mathemat-

ics program. *Id.* at ¶ 21. During the course of that meeting, Mrs. Schofield did bring to Mrs. Race's attention the incident in which the Plaintiff was referred to as an "ugly dog faced bitch" and that the Plaintiff had been excluded from several class projects including the Indian headdress and turkey call project. *Id.* at ¶¶ 22, 23. Mrs. Race contends Mrs. Schofield asked her to address these problems and Mrs. Race allegedly complied. *Id.* at ¶¶ 22, 24, 26. Mrs. Race claims that nothing further was asked of her. *Id.* Finally, Mrs. Race denied that she ever disregarded or ignored any complaints made by the Plaintiff, her mother or anyone else in regard to alleged sexual harassment. *Id.* at ¶ 16.

The Defendants contend that the Plaintiff at no time made or filed any written complaint alleging that the acts of sexual harassment perpetrated by fellow students were ignored by school district officials, *Id.* at ¶ 11, nor filed a complaint pursuant to SKCS's Title IX policy during the time frame referenced by the Plaintiff's complaint. *Id.* at ¶ 8.

## II. DISCUSSION

The Defendants contend that Title VII analysis is not applicable to a Title IX claim where a sexually hostile learning environment was created by a student's peers. In the alternative, the Defendants argue that, even if Title IX did apply, they did not receive adequate notice of the harassment. Finally, in regard to the individual Defendants Mr. Parker and Mrs. Race, the Defendants argue that they are entitled to protection from a 42 U.S.C. § 1983 suit based on qualified immunity. Consequently, the Defendants move pursuant to Fed.R.Civ.P. 56 for summary judgment.

The Plaintiff claims that their Title IX claim should be governed by the same legal standards applicable to Title VII regarding an employer's toleration of a sexually hostile working environment created by employees. In this vein, the Plaintiff asserts that the Defendants' liability for a hostile learning environment is predicated on findings that a *prima facie* hostile environment existed and that the Defendants knowingly failed to act to remedy it. Additionally, the Plaintiff asserts 42 U.S.C. § 1983 claims based on the alleged Title IX violation. Finally, the plaintiff asserts that the Defendants' do not have qualified immunity from 42 U.S.C. § 1983 because the right of a student to be free from a hostile environment created by peer-on-peer sexual harassment is well settled under Title IX.

### A. Standard For Summary Judgment

■ A motion for summary judgment should be granted "if the pleadings ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact has been raised, not only must there be no genuine issue as to the evidentiary facts, but there also must be no controversy regarding the inferences to be drawn from them. *Bennett v. New York City Dept. of Corrections,* 705 F.Supp. 979, 982 (S.D.N.Y.1989).

■ Once the moving party has satisfied her burden, the nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When "considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 516 (2d Cir.1994), *quoting* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2721 at 40 (2d ed. 1983). All ambiguities must be weighed in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

■ Where a Title VII Defendant's intent is at issue, summary judgment is generally inappropriate.[1] *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991). "The showing the plaintiff must make as to the elements of the *prima facie* case [of discrimination] in order to defeat a motion for summary judgment is de *minimis*." *Dortz v. City of New York*, 904 F.Supp. 127, 150 (S.D.N.Y.1995), *citing Cronin v. Aetna Life Insurance Co.*, 46 F.3d 196, 203–04 (2d Cir.1995).

In determining whether the plaintiff has met the *de minimis* initial burden of showing "circumstances giving rise to an inference of discrimination," the function of the court on a summary judgment motion is to determine whether the "proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn."

*Id., citing Cronin*, 46 F.3d at 204. With these standards in mind, the Court now turns to the issues presented.

### B. 20 U.S.C. § 1681 *et seq.* (Title IX)

As with any statute, our starting point in determining the scope of Title IX is the statutory language. *Bailey v. United States*, —— U.S. ——, ——, 116 S.Ct. 501, 504, 133 L.Ed.2d 472 (1995). Title IX states, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ..." 20 U.S.C. § 1681(a). The purpose of Title IX is to protect individuals from sex discrimination by denying federal financial aid to those in-

stitutions that bear responsibility for sexually discriminatory practices. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 n. 36, 99 S.Ct. 1946, ·1961 n. 36, 60 L.Ed.2d 560 (1979), *citing* 117 Cong.Rec. 39252 (1971). The Supreme Court has determined that a private right of action is implied under Title IX, and in addition to the availability of injunctive and declaratory relief, monetary damages are also available for intentional violations of Title IX. *Id.* at 709, 99 S.Ct. at 1964; *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 75, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208 (1992),[2] *see also Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248 (2d Cir.1995).

### 1. Application of Title VII Jurisprudence to Title IX Claim

■ The Defendants assert that Title VII jurisprudence is not applicable to a Title IX claim. Rather, the Defendants claim that there can be no Title IX liability unless the Plaintiff can show that the Defendants responded differently, *ceteris paribus*, to complaints of sexual harassment from male and female students. Alternatively, the Plaintiff argues that Title VII jurisprudence provides the appropriate legal standards for analyzing a Title IX claim. More particularly, the Plaintiff seems to claim that the Court should apply Title VII's legal test for determining if there is a "hostile work environment" to determine if there is a "hostile learning environment," and thus, liability under Title IX. For the following reasons this Court rejects the Defendants' argument, and holds that Title VII legal standards apply to an analysis of Title IX claims.

At the outset, the Court cautions that by holding that Title VII legal standards apply

---

1. As will be shown below, Title VII analysis is applicable to Title IX claims.

2. Like the instant case, the *Franklin* Court faced allegations of intentional discrimination, and thus, a monetary remedy is available to the Plaintiff herein.
The *Franklin* Court explained that:
The point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award. This notice problem does not arise in a case such as this, in

which intentional discrimination is alleged ... Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe. Moreover, the notion that Spending Clause statutes do not authorize monetary awards for intentional violations is belied by our unanimous holding in [*Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 628, 104 S.Ct. 1248, 1251, 79 L.Ed.2d 568 (1984) ].
*Franklin*, 503 U.S. at 73, 112 S.Ct. at 1037 (citations omitted).

to an analysis of Title IX claims, the Court is *not* holding that the entirety of Title VII jurisprudence must be applied to Title IX. Rather, a Court must determine the appropriate segments and the proper extent to which the law of Title VII applies to a given Title IX analysis. Title VII jurisprudence is a guide, and a Court should not blindly apply Title VII to determine the issues raised in a Title IX case.

A considerable body of case law instructs that when analyzing a Title IX claim courts should apply Title VII jurisprudence. *Franklin,* 503 U.S. at 73–76, 112 S.Ct. at 1036–38 ("the same rule [as when a supervisor sexually harasses a subordinate under Title VII] should apply when a teacher sexually harasses and abuses a student."); *Murray,* 57 F.3d at 249 ("In reviewing claims of discrimination brought under Title IX by employees, whether for sexual harassment or retaliation, courts have generally adopted the same legal standards that are applied to such claims under Title VII."); *Davis v. Monroe County Bd. of Educ.,* 74 F.3d 1186, 1190 (11th Cir.1996) (Title VII standards governing hostile working environment applicable to Title IX claim against school for knowingly failing to act to remedy hostile school environment); *Roberts v. Colorado State Bd. of Agric.,* 998 F.2d 824, 832 (10th Cir.1993) (Ti-

tle VII provides "the most appropriate analogue when defining Title IX's substantive standards."); *Lipsett v. University of Puerto Rico,* 864 F.2d 881 (1st Cir.1988) (Title VII standard for proving discriminatory treatment applies to claims arising under equal protection clause and Title IX); *see also, Yusuf v. Vassar College,* 35 F.3d 709, 714 (2d Cir.1994) (In the case of gender discrimination occurring in college disciplinary proceedings, courts should interpret Title IX by looking to the body of law developed under Title VI, as well as the case law interpreting Title VII).

The Second Circuit has determined that "[t]he [Supreme] Court's citation of *Meritor Savings Bank, F.S.B. v. Vinson,*[3] 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), a Title VII case, in support of *Franklin*'s[4] central holding indicates that, in a Title IX suit for gender discrimination based on sexual harassment of a student, an educational institution may be held liable under standards *similar* to those applied under Title VII."[5] *Murray,* 57 F.3d at 249 (emphasis added). In addition, the Tenth–Circuit has stated "[b]ecause Title VII prohibits the identical conduct prohibited by Title IX, i.e., sex discrimination, we regard it as the most appropriate analogue when defining Title IX's substantive standards ..."[6] *Mabry v.*

---

**3.** *Meritor* involved allegations of supervisor/supervisee sexual harassment under Title VII.

**4.** *Franklin* involved allegations of teacher/student sexual harassment under Title IX.

**5.** Title VII states, in relevant part, that:
It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e–2(a).
Accordingly, conduct which is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment", *Harris v. Forklift Sys-*

*tems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), coupled with "a specific basis for imputing the conduct that created the hostile environment to the employer," is actionable under Title VII. *Murray,* 57 F.3d at 249. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris,* 510 U.S. at 21, 114 S.Ct. at 370. "Whether the harassing conduct of a supervisor or coworker should be imputed to the employer is determined in accordance with common-law principles of agency." *Murray,* 57 F.3d at 249.

**6.** The Tenth–Circuit went on to state that this included "the question of whether 'disparate impact' is sufficient to establish discrimination under Title IX. It is well settled that Title VII does not require proof of explicit or overt discrimination." *Mabry,* 813 F.2d at 316, *citing Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

*State Bd. of Community Colleges & Occupational Educ.*, 813 F.2d 311, 316 n. 6 (10th Cir.1987), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987). Thus, to the extent that Title IX prohibits the same conduct prohibited by Title VII, this Court may apply the legal standards from Title VII to guide its analysis of the instant Title IX claim.[7]

### 2. Peer-on-Peer Sexual Harassment

Although the Second Circuit has applied Title VII jurisprudence to an analysis of a Title IX claim for sexual harassment between a teacher and a student, *Murray*, 57 F.3d at 249, *citing*, *Meritor*, 477 U.S. at 64, 106 S.Ct. at 2404, it has not directly addressed the issue of whether Title VII analysis is appropriate, *in toto*, where a Plaintiff seeks to impose liability, under Title IX, on an educational institution for a hostile learning environment created by peer-on-peer sexual harassment.[8]

■ As pointed out by the Plaintiff, Title VII principles impose liability on employers for knowingly failing to act to remedy a hostile working environment created by sexual harassment between co-workers. The Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment at 10–13, *citing Franklin*, 503 U.S. 60, 112 S.Ct. 1028; *Davis*, 74 F.3d 1186; *Murray*, 57 F.3d 243; *Brown v. Hot Sexy and Safer Productions, Inc.*, 68 F.3d 525 (1th Cir.1995); *Patricia H.*

*v. Berkeley Unified Sch. Dist.*, 830 F.Supp. 1288 (N.D.Cal.1993); *Bosley v. Kearney R–I Sch. Dist.*, 904 F.Supp. 1006 (W.D.Mo.1995)). The Plaintiff argues that because Title VII jurisprudence has been held to apply to analyses of Title IX claims generally, educational institutions should also be liable, just as employers under Title VII, for knowingly failing to act to remedy a hostile learning environment created by peer-on-peer sexual harassment. *Id.* The Plaintiff further argues that institutional liability for peer-on-peer sexual harassment is based on agency principles and agency principles support a finding that constructive notice of peer-on-peer sexual harassment is sufficient to establish institutional liability. *Id.* at 14–17 (The Plaintiff relies on Title VII cases to support this proposition arguing that "[n]o rationale justifies distinguishing schools from the workplace in assessing institutional liability.").

The Defendants argue that the peer-on-peer situation in a classroom is very different from the employee/employee or employer/employee situation in the workplace. The Defendants' Brief Reply at 1–3. Title VII proscribes actions by adults, rather than children, and arises in an agency relationship. *Id.* Both of the aforementioned characteristics of a Title VII claim, according to the Defendants, are absent in the school setting. This is particularly true in the context of a hostile learning environment created by peer-on-peer sexual harassment. According-

---

**7.** The Defendants rely on the Fifth-Circuit's opinion in *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006 (5th Cir.1996). *Rowinsky* did not discuss when or if Title VII jurisprudence was applicable to Title IX analysis. Discussion of Title VII was limited to the context of discussing agency principles between employer and employee. The central holding in *Rowinsky* was that a school district can not be held liable, under Title IX, for a hostile environment created by peer sexual harassment absent allegations that the school district itself intentionally discriminated on the basis of sex. *Id.* at 1016. In essence, *Rowinsky* applied an equal protection, disparate treatment analysis. *Id.* at 1016 ("a school district might violate Title IX if it treated sexual harassment of girls, or even if it turned a blind eye toward sexual harassment of girls while addressing assaults that harmed boys."). In addition, the *Rowinsky* Court found that liability under Title IX could attach only to recipients of Federal funds or their agents. *Id.* at 1013. When the hostile environment is created by stu-

dents, liability can not attach because students are not agents of the school. *Id.* at 1011 n. 11.

This Court is not bound by the Fifth-Circuit's decision in *Rowinsky*. Although this Court finds the application of agency principles appropriate to a Title IX claim for a hostile learning environment created by peer-on-peer sexual harassment, as will be explained herein, this Court builds upon the *Rowinsky* decision and finds that Title VII jurisprudence provides an appropriate guide to analyzing Title IX claims.

**8.** There is no consensus among the Circuit Courts as to the precise legal standard to be applied to determine institutional liability under Title VII analysis, for a Title IX violation. *See Doe v. Petaluma*, 830 F.Supp. 1560, 1563 (N.D.Cal.1993), *rev'd on other grounds*, 54 F.3d 1447 (9th Cir.1995); *cf., Davis v. Monroe County Bd. of Educ.*, 74 F.3d 1186, 1193–94 (11th Cir. 1996).

ly, the Defendants urge the Court, at a minimum, to apply some modified version off Title VII.

Title VII requires employers to take steps to assure their employees a work environment free from sexual harassment, regardless of whether the harassment or hostile environment is caused by a supervisor or other co-workers. *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir.1994) *cert. denied*, —— U.S. ——, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994); *see also Davis*, 74 F.3d at 1193–94 (Title IX requires an educational institution to take action to remedy a hostile environment created by peer-on-peer sexual harassment). When an employer fails to act to remedy a hostile environment created by co-workers the employer discriminates against an individual in violation of Title VII. *Id.* Similarly, the Court finds that in the Title IX context, when an educational institution fails to take steps to remedy peer-on-peer sexual harassment, it should be held liable to the harassed student for that discriminatory conduct.

> Just as a working woman should not be required to "run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living," *Meritor*, 477 U.S. at 67, [106 S.Ct. at 2405] a female student should not be required to run a gauntlet of sexual abuse in return for the privilege of being allowed to obtain an education.

*Davis*, 74 F.3d at 1194.

"A student should have the same protection in school that an employee has in the workplace." *Davis*, 74 F.3d at 1192–93, *citing*, *Franklin*, 503 U.S. at 73, 112 S.Ct. at 1037. Moreover, "as economically difficult as it may be for adults to leave a hostile workplace, it is virtually impossible for children to leave their assigned school." *Davis*, 74 F.3d at 1193. "A sexually abusive environment inhibits, if not prevents, the harassed student

from developing her full intellectual potential and receiving the most from the academic program." *Id., citing Patricia H. v. Berkeley Unified Sch. Dist.*, 830 F.Supp. 1288, 1293 (N.D.Cal.1993).

Yet, "importing a theory of discrimination from the adult employment context into a situation involving children is highly problematic." *Rowinsky*, 80 F.3d at 1011. "At a theoretical level, the problem with sexual harassment is 'the unwanted imposition of sexual requirements in the context of unequal power.'" *Id. citing* Catherine Mac-Kinnon, SEXUAL HARASSMENT OF WORKING WOMEN. 1 (1979). In the context of unwanted peer-on-peer sexual harassment such a power relationship does not exist. "Unwanted sexual advances of fellow students do not carry the same coercive effect or abuse of power as those made by a teacher, employer or co-worker." *Rowinsky*, 80 F.3d at 1011.

Therefore, the issue remains under what parameters a Court may find an educational institution to be liable for failing to act to remedy a hostile learning environment created by peer-on-peer sexual harassment. In other words, to what extent must the institution (and the school board in this case) be on notice of the alleged ongoing harassing conduct, *i.e.*, must notice be actual, or may notice be constructive, for Title IX liability to attach.

### 3. Notice

■ Title VII jurisprudence applies an actual and constructive notice standard for determining if an employer knowingly failed to act to remedy a hostile working environment created by peer-on-peer harassment. *See Karen Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996); *Equal Employment Opportunity Commission v. A. Sam & Sons Produce Co., Inc.*, 872 F.Supp. 29, 34 (W.D.N.Y.1994).[9]

9. Title VI, after which Title IX is modeled, *see Cannon v. Univ. of Chicago*, 441 U.S. 677, 695–96, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979), also applies a actual and/or constructive notice requirement for knowingly failing to remedy a racially hostile environment. *Yusuf*, 35 F.3d at 714. The reasons why constructive notice is applied to Title VI was explained by the

Supreme Court in *Alexander v. Choate*, 469 U.S. 287, 292–94, 105 S.Ct. 712, 715–17, 83 L.Ed.2d 661 (1985), and *Guardians Ass. v. Civil Service Commission*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). In *Guardians*, the Court confronted the question whether Title VI reached both intentional and disparate-impact discrimination. No opinion commanded a majority in

Constructive notice is a substitute for actual notice and will be found to exist "where a defective condition has existed for such a length of time that knowledge thereof should have been acquired in the exercise of reasonable care." *Fiorella v. Calomiris*, 1996 WL 288471 * 3 (E.D.N.Y.1996). This is, in essence, a negligence standard. *See Doe*, 830 F.Supp. at 1576. For the reasons stated below, this Court finds that to establish a Title IX claim for a hostile learning environment created by peer-on-peer sexual harassment the Plaintiff must show that the school and/or school board received *actual* notice of the sexual harassing conduct and failed to take action to remedy it. Liability will not lie if the Plaintiff can show only constructive notice.

As stated above, Title IX analysis is guided by Title VI and Title VII jurisprudence "only to the extent that the language and history of Title IX do not suggest a contrary interpretation." *Mabry*, 813 F.2d 311. The reasoning for applying constructive notice to Title VII claims arises out of agency principles. *See Meritor*, 477 U.S. at 69–74, 106 S.Ct. at 2407–08. In *Meritor*, the Supreme Court stated that they "agree with the EEOC [10] that Congress wanted courts to look to agency principles for guidance in [the Title VII] area." *Id.*, at 71, 106 S.Ct. at 2408. Therefore, liability for a hostile work environment created by a co-worker may be imputed to an employer even though the employer possesses no direct knowledge of the hostile environment because the co-worker is an agent of the employer.

■ Although an employee is an agent of an employer, a student, of an educational institution is not, *per se*, an agent of that institution.

(1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. (2) The one for whom action is to be taken is the principal. (3) The one who is to act is the agent.

Restatement (Second) of Agency § 1 (1957).

"Agency is a legal concept which depends upon the existence of required factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) of Agency § 1 cmt. b (1957). Students, *per se*, are not agents of the schools which they attend. In order for agency principles to attach between a student and their school there must be some manifestation of consent by the student to the school that the student shall act on the school's behalf and subject to the school's control, as well as, consent from the school to the student's actions. The Plaintiff has not alleged, nor provided any evidence, that the

Guardians, and Members of the Court offered widely varying interpretations of Title VI. Nonetheless, the Court in *Alexander* explained that *Guardians* expounded a two-pronged holding concerning the nature of the discrimination proscribed by Title VI. First, the Court held that Title VI itself directly reached only instances of intentional discrimination. Second, the Court held that actions having an unjustifiable disparate impact on minorities could be redressed through agency regulations designed to implement the purposes of Title VI. *Alexander*, 469 U.S. at 293–94, 105 S.Ct. at 716–17. Thus, the reasons why constructive notice has been applied to Title VI cases was due to the administrative regulations accompanying Title VI.

**10.** The EEOC, in its *amicus* brief, stated that "courts formulating employer liability rules should draw from traditional agency principles." *Meritor*, 477 U.S. at 69, 106 S.Ct. at 2407, *citing*

Brief for United States and EEOC as *Amicus Curiae* 22. Additionally, the Court found that the EEOC believed that agency principles lead to: a rule that asks whether a victim of sexual harassment had reasonably available an avenue of complaint regarding such harassment, and, if available and utilized, whether that procedure was reasonably responsive to the employee's complaint. If the employer has an expressed policy against sexual harassment and has implemented a procedure specifically designed to resolve sexual harassment claims, and if the victim does not take advantage of that procedure, the employer should be shielded from liability absent actual knowledge of the sexually hostile environment ... In all other cases, the employer will be liable if it has actual knowledge of the harassment or if, considering all the facts of the case, the victim in question had no reasonably available avenue for making his or her complaint known to appropriate management officials. *Id.*

harassing students were acting on behalf of or with authority from SKCS. Therefore, although constructive notice principles properly attach between employer and employee in the Title VII context, they do not attach between the alleged harassing student and the Defendants' in this Title IX case. *See Rowinsky,* 80 F.3d at 1011, n. 11.

### 4. Title VII's Criteria Applied to Hostile Learning Environment

■ It is now well established that two forms of sexual harassment violate Title VII's prohibitions against workplace inequality: 1) *quid pro quo* and 2) hostile work environment harassment. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304–05 (2d Cir.1995); *see Meritor,* 477 U.S. at 73, 106 S.Ct. at 2408 (recognizing that a claim of hostile environment sex discrimination is actionable under "Title VII"). It is the "hostile environment" category that is implicated in this case.

■ Under Title VII, in order to survive a motion for summary judgment the Plaintiff must establish a establish a *prima facie* case of sexual harassment [11] resulting in the creation of a hostile work environment. In this vein, a Title VII Plaintiff must demonstrate that:

> (1) she belongs to a protected group; (2) she was the subject of unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the sexual harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action.

*Fair v. Guiding Eyes for the Blind, Inc.,* 742 F.Supp. 151, 155 (S.D.N.Y.1990), *citing, Meritor,* 477 U.S. at 63–69, 106 S.Ct. at 2403–07. Similarly, a Title IX Plaintiff must demonstrate that:

> (1) she is a member of a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment; and (5) some basis for institutional liability has been established.

*Davis,* 74 F.3d at 1194.

This test requires "an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive". *Harris,* 510 U.S. at 17, 114 S.Ct. at 368. With the foregoing legal standards and the above cited five-part test in mind, the Court now considers the Plaintiff's Title IX claim.

### i. Protected Group

There is no dispute that the Plaintiff, as a female, is a member of a protected group. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), *Bridges v. Eastman Kodak Co.,* 822 F.Supp. 1020, 1027 (S.D.N.Y.1993). Thus, the Plaintiff satisfies the first prong of the test.

### ii. Unwanted Sexual Harassment

■ It is not disputed that the alleged sexual harassment, which the Plaintiff was subjected to, was unwanted. Yet, this does not end our inquiry. To establish unwelcome sexual harassment a Plaintiff must demonstrate that "the conduct complained of would have interfered with a reasonable person's [learning] performance and would have seriously affected a reasonable person's emotional well-being." *Fair,* 742 F.Supp. at 155. [12]

---

**11.** Sexual harassment involves "[u]nwelcome sexual advances for sexual favors, and other verbal or physical conduct of a sexual nature." 29 C.F.R. § 1604.11(a), *see also Meritor,* 477 U.S. at 64, 106 S.Ct. at 2404 ("the Guidelines provide that such sexual misconduct constitutes prohibited 'sexual harassment,' whether or not it is directly linked to the grant or denial of an economic *quid pro quo,* where 'such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creat-

ing an intimidating, hostile or offensive working environment.' "), *citing* 29 C.F.R. § 1604.11(a)(3).

**12.** The Supreme Court has stated that "Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived and is perceived as hostile or abusive there is no need for it also to be psychologically

[A] hostile environment in an educational setting is not created by simple childish behavior or by an offensive utterance, comment, or vulgarity. Rather, Title IX is violated when the [educational environment] is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's [environment] and create an abusive environment."

*Davis*, 74 F.3d at 1194, *citing Harris*, 510 U.S. at 21, 114 S.Ct. at 370, *quoting Meritor*, 477 U.S. at 64–65, 106 S.Ct. at 2404–05.[13]

■■■ The conduct alleged by the Plaintiff to constitute sexual harassment includes: verbal epithets such as: "lesbian", "prostitute", "retard", "scum", "bitch", "whore" and "ugly dog faced bitch", and physical harassment including: snapping the girls' bras, running their fingers down the girls' backs, stuffing paper down the girls' blouses, cutting the girls' hair, grabbing the girls' breasts, spitting, shoving, hitting and kicking. Such conduct must be found objectively and subjectively to constitute more than "simple horseplay, childish vulgarities or adolescent flirting" to be categorized as sexual harassment. *See Davis*, 74 F.3d at 1195, *Harris*, 510 U.S. at 17, 114 S.Ct. at 368.

Although the conduct set forth above, if proven to have occurred, is clearly offensive, the pivotal issue for the fact-finder is whether such conduct constitutes sexual harassment. This Court can not conclude, as a matter of law, that the conduct alleged by the Plaintiff to constitute sexual harassment is or is not sufficient to constitute sexual harassment. That is a question for a jury to decide.

### iii. Harassment Based on Plaintiff's Sex

■■■ To establish that the harassment was based on the Plaintiff's sex, the Plaintiff must prove that "but for the fact of her sex, the plaintiff would not have been the object of harassment." *Id., see also Shah v. New*

*York State Dept. of Civil Service*, 1996 WL 19021 * 5 (S.D.N.Y.), *citing Martin v. Citibank, N.A.*, 762 F.2d 212, 216 (2d Cir.1985) ("The essence of a Title VII plaintiff's case must be differential treatment of similarly situated employees."). Profane language may or may not lead to the inference that such language was directed at the Plaintiff because of her sex. *See Equal Employment Opportunity Comm'n v. A. Sam & Sons Produce Co.*, 872 F.Supp. 29, 35–36 (W.D.N.Y.1994) ("the term, 'whore' is usually gender-specific and is certainly more offensive when directed at a woman. Thus the inference is sufficiently strong that [the harassing employee's] conduct was directed at [the Plaintiff] because she was a woman."); *cf., Fair*, 742 F.Supp. at 156 (there is no evidence to suggest that the word "bitch" would be more offensive to one sex than to another). Similarly, the fact that certain allegedly unwanted conduct was physical rather than verbal does not lead to the conclusion that, as a matter of law, such conduct was gender based. The simple fact that a male student harassed a female student in a gender related manner, *per se*, does not necessarily lead to the conclusion that the alleged harassment was because of the Plaintiff's sex. *Id.*

This proposition is further supported by the fact that the students alleged to have done the harassing were only in sixth-grade. *See* Monica L. Sherer, No Longer Just Child's Play: School Liability Under Title IX For Peer Sexual Harassment. 141 U.Pa.L.Rev. 2119, 2129 May 1993. ("That a student's behavior be fairly recognized as flirting or teasing rather than sexual harassment is a legitimate concern because such a mischaracterization may discourage healthy social/personal relationships."). It is possible that children of such tender years are not even sufficiently aware that their conduct is sexual in nature, much less committed because of the harassee's sex.

The Court reiterates its general reluctance to grant summary judgment where a reason-

---

injurious." *Harris*, 510 U.S. at ——, 114 S.Ct. at 371.

**13.** Davis brought a Title IX and 42 U.S.C. § 1983 claim action on behalf of a fifth-grade student against, *inter alia*, the Monroe County School Board concerning the alleged sexual harassment

of the student by a fellow classmate which the school knew about but failed to remedy. *Davis*, 74 F.3d at 1188. The allegedly sexually harassing conduct included attempted fondling, actual fondling and offensive and sexually suggestive language.

able finder of fact might infer a discriminatory motive. *Rosen*, 928 F.2d at 533. Thus, after drawing all ambiguities and inferences in favor of the Plaintiff, this Court finds that a reasonable jury might conclude that but for the Plaintiff's sex she would not have been harassed.

### iv. Effected a Term, Condition or Privilege of Education

 The determination of what constitutes a hostile learning environment "is not, and by its nature cannot be, a mathematically precise test." *Harris*, 510 U.S. at 22, 114 S.Ct. at 371. To show that conduct meets the threshold of "affecting a term, condition or privilege" of education, a Plaintiff must demonstrate more than mere isolated incidents. *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986). "[C]asual comments or accidental or sporadic conversation will not trigger equitable relief pursuant to the statute." *Id.* Yet, the Court stresses that "[it] is not how long the sexual innuendos, slurs, verbal assaults, or obnoxious course of conduct lasts." *Dortz*, 904 F.Supp. at 149, *citing Carrero v. New York City Housing Auth.*, 890 F.2d 569, 578 (2d Cir. 1989). Rather, "in analyzing 'the totality of the circumstances,' the pervasiveness of such actions is also to be determined by reference to '[t]he offensiveness of the individual actions complained of.'" *Zveiter v. Brazilian Nat'l Superintendency of Merchant Marine*, 833 F.Supp. 1089, 1095 (S.D.N.Y.1993), *quoting Carrero*, 890 F.2d at 578 (upholding trial court's determination that conduct over two-week period constituted sexual harassment sufficient to establish hostile working environment in violation of Title VII).

The Plaintiff asserts that the alleged hostile environment interfered with her education. Bruneau Aff'd at 1–2. The Plaintiff states that, "[u]p until this year [the 1993–94 school year], I loved school, was an excellent student and enjoyed learning." *Id.* at 9. Additionally, she asserts that the harassing conduct made her feel unsafe and caused her to be depressed. *Id.* at 2. She states that the alleged sexual harassment was pervasive and regular. *Id.* The Plaintiff alleges numerous incidents of alleged sexual harassing conduct occurring on a daily basis throughout the 1993–94 school year. *Id.* at 2–8. The Plaintiff's assertions are further supported by the fact that the Plaintiff transferred out of the school in March, 1994. *Id.* at 2.

The Defendants assert that the alleged sexual harassment, if it occurred at all, was not pervasive or regular enough to create a hostile learning environment. Defendants' Memorandum of Law at 8. The Defendants claim that in those instances where the school was notified, by the Plaintiff or her parents, that the Plaintiff was mistreated the offending parties were punished accordingly. *Id.*, at 9–1; *see also* Race Aff'd at ¶¶ 16–30 (offending students were removed from the classroom and reprimanded); Parker Aff'd at Exhibit A (offending students were referred to the principal).

Essentially, both sides have alleged facts which, if proven, would support a reasonable inference by the fact-finder in that party's favor. Therefore, based on the above facts and circumstances of this case, the Court can not hold, as a matter of law, that no reasonable jury would find that the conduct complained of, if proven, affected the terms, conditions or privileges of the Plaintiff's education.

### v. Institutional Liability

The Second Circuit, using *Meritor*'s general guidance, has derived the following rules of employer liability under Title VII:

> if a plaintiff's supervisor is the alleged harasser, an employer will be liable if the supervisor uses his actual or apparent authority to further the harassment, or if the supervisor was otherwise aided in accomplishing the harassment by the existence of the agency relationship. By contrast, where a low-level supervisor does not rely on his supervisory authority to carry out the harassment, or a co-employee of the plaintiff is the alleged harasser, an employer will generally not be liable unless 'the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it.

*Tomka*, 66 F.3d 1295, 1305 (2d Cir.1995) (District Court's grant of summary judgment

reversed because sufficient evidence of hostile environment created by co-workers existed to raise questions of material fact). As the Court found earlier, the liability of the school and the school board for any alleged sexual harassment inflicted by one student on another hinges on the type of notice attributable to the Defendant school and school board. In the context of Title IX, this Court, for the reasons set forth above, has held that such notice must be actual notice of the sexually harassing conduct. *See supra* § B(3).

■■■ Under the standard set forth by the Second Circuit, an employer will not be held liable for alleged sexual harassment by a fellow employee, under Title VII, unless "the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995). Similarly, an educational institution will not be held liable for alleged peer-on-peer sexual harassment unless the school provided no reasonable avenue of complaint or knew of the harassment but did nothing about it.

It is not disputed that SKCS did provide a reasonable avenue for complaint. The school district has an established Title IX policy in effect during the time period relevant to this case. Moreover, given that certain complaints relating to peer conduct against the Plaintiff were expressed to Mr. Parker and Mrs. Race, it is clear that avenues to express and redress behavior problems among students were available. It is because of these complaints that the Plaintiff alleges that SKCS faculty and administrators, Mr. Parker and Mrs. Race in particular, had knowledge of the alleged peer-on-peer sexual harassment yet failed to act to remedy it.

■■■ As to the issue of actual notice, the Plaintiff alleges that the Defendants were aware of the hostile environment yet failed to act to remedy it. Such awareness, or actual notice, allegedly came from meetings with the Plaintiff and/or her mother where they repeatedly notified Mr. Parker and Mrs. Race of the sexual harassment that was occurring in their classroom and school. Plaintiff's Brief in Response to the Defendants' Motion for Summary Judgment at 5.

It is undisputed by the parties that the Plaintiff and/or Mrs. Schofield made verbal complaints to Mr. Parker and/or Mrs. Race concerning alleged peer sexual harassment on or about November 3, 1993, and November 10, 1993. Defendants' Statement of Uncontested Facts at ¶ 12. Yet, the Defendants state that they were not notified of pervasive and regular sexual harassment sufficient to constitute a hostile learning environment. It is the Defendants' position that each complaint related to a single incident where a fellow student referred to the Plaintiff as a "dog faced bitch." *Id.* Additionally, Mr. Parker, the Plaintiff's classroom teacher, contends that, other than the Plaintiff's complaint brought at the outset of this suit, he has "never heard Eve Bruneau, Pat Schofield, or any other student or parent allege that there was sexual harassment occurring in my classroom." Parker Aff'd at 11, 15. He did not observe any sexual activity between any children and does not believe that any sexual harassment occurred in his classroom. *Id.*

Based on the foregoing, and particularly in light of the Court's recognition that it must not decide issues but merely identify those issues that are in dispute, the Court can not find, as a matter of law, that the school and/or the school board were not on actual notice of ongoing peer-on-peer sexual harassment. The Court finds that, after consideration of the relevant legal standards and considerable submissions of the parties, there are material factual issues as to: (1) whether the complained of conduct was sexual harassment; (2) whether such harassment was based on the Plaintiff's sex; (3) whether such harassment, if proven, affected the terms, conditions or privileges of the Plaintiff's education; and (4) whether there is a basis for institutional liability, *i.e.*, whether the school and/or school board were on actual notice of the offending conduct. Accordingly, the Defendants' motion for summary judgment, as to the Title IX claim is denied.

## C. 42 U.S.C. § 1983 Claims

■■■ 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depravation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a valid civil rights claim under 42 U.S.C. § 1983, a Plaintiff must allege facts showing that a person acting under color of state law deprived the Plaintiff of a right, privilege, or immunity secured by the United States Constitution or the laws of the United States. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Costello v. Fairfield,* 811 F.2d 782 (2d Cir.1987). The Court notes that federal courts may not apply a "heightened pleading standard" to civil rights claims under 42 U.S.C. § 1983. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

■ The Plaintiff has alleged that the Defendants denied her the right to be free from a hostile environment created by peer-on-peer sexual harassment as guaranteed by Title IX. The Defendants argue that Title IX can not support a 42 U.S.C. § 1983 claim. Defendants' Memorandum of Law at 18–19, *citing Pfeiffer v. Sch. Bd. Of Marion Center Sch. Dist.,* 917 F.2d 779, 789 (3d Cir.1990); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981) ("When a State Official is alleged to have violated a Federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under Section 1983.") The Defendants argue that Congress has included in Title IX a comprehensive enforcement scheme, and that such a scheme evinces Congress' intent to preclude a 42 U.S.C. § 1983 remedy for Title IX violations. Therefore, the Defendants seek the dismissal of the Plaintiff's 42 U.S.C. § 1983 claim.

The Defendants' argument has not been addressed directly by the Second Circuit in regard to Title IX. However, the Defendants' position has been adopted by one District Court within the Second Circuit. *Mennone v. Gordon,* 889 F.Supp. 53, 59 (D.Conn. 1995). The *Mennone* Court found that the statutorily prescribed administrative remedies, as well as the availability of a private right of action with a variety of remedies such as injunctive and declaratory relief and monetary damages for intentional violations, "provided significant evidence of congressional intent to supplant [a] § 1983 remedy." *Mennone,* 889 F.Supp. at 59, *citing Wright v. City of Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 427, 107 S.Ct. 766, 772, 93 L.Ed.2d 781 (1987); *also citing Cannon,* 441 U.S. 677, 99 S.Ct. 1946 (private right of action); *Franklin,* 503 U.S. 60, 112 S.Ct. 1028 (monetary damages for intentional violations); 34 C.F.R. §§ 100.7–100.8, 101.23 (administrative remedy which is initiated by filing a complaint with the Department of Education, government has authority to investigate alleged violations and impose sanctions including the denial of federal funding). Accordingly, the *Mennone* dismissed the Plaintiff's 42 U.S.C. § 1983 claim predicated on a violation of Title IX.

The Second Circuit has adopted *Wright*'s holding that a private right of action is significant evidence of congressional intent to supplant a 42 U.S.C. § 1983 remedy. *See Marshall v. Switzer,* 10 F.3d 925, 927 (2d Cir. 1993) (denying Defendant's dismissal motion in regards to the Plaintiff's 42 U.S.C. § 1983 claim because Title I does not provide a private right of action), *cf., Uniformed Firefighters Ass'n v. City of New York,* 676 F.2d 20, 22 (1982) (granting Defendant's motion to dismiss the Plaintiff's 42 U.S.C. § 1983 claim because the Comprehensive Employment and Training Act's remedy providing a private right of action indicated congressional intent to preclude a 42 U.S.C. § 1983 remedy).

The Supreme Court has found that, although not express in the statute, Title IX does permit a private right of action. *See Cannon,* 441 U.S. 677, 99 S.Ct. 1946. Moreover, as stated above, the full panoply of

remedies is available to a Title IX Plaintiff, including monetary damages. *Franklin*, 503 U.S. 60, 112 S.Ct. 1028. Accordingly, the Court finds that Congress intended to supplant 42 U.S.C. § 1983 claims based on sexual harassment in federally funded institutions by its enactment of Title IX. *See Sea Clammers*, 453 U.S. 1, 101 S.Ct. 2615. The Plaintiff can not state a 42 U.S.C. § 1983 claim based on a Title IX right against the Defendants. Accordingly, the Court grants the Defendants' motion for summary judgment and dismisses the Plaintiff's 42 U.S.C. § 1983 claims against the Defendants.

### D. Qualified Immunity

■ Although the Court need not determine the issue of qualified immunity, it nevertheless will consider the issue at this time. For the following reasons, had the Plaintiff's 42 U.S.C. § 1983 claim been sustained, the individual Defendants, Mr. Parker and Mrs. Race would have been immune from suit, on grounds of qualified immunity, because it was not sufficiently well settled that peer-on-peer harassment in a school setting violated Title IX.

■ A Defendant has qualified immunity from a 42 U.S.C. § 1983 suit when:

[1] it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution. Second, even if the interest asserted by the plaintiff was clearly of a type generally protected by federal law; [2] it was not clear at the time of the acts at issue that an exception did not permit those acts; [or 3] if it was objectively reasonable for him to believe that his acts did not violate those rights.

*Robison v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987).

"The right the government official is alleged to have violated is 'clearly established,' and hence beyond any qualified immunity, when the 'contours' of the right are sufficiently unambiguous so that a reasonable official knows that what he is doing violates that right." *Molinelli v. Tucker*, 901 F.2d 13, 15 (2d Cir.1990), *citing Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).

A finding of apparent unlawfulness does not require that an earlier decision of this court be directly on point with the current facts; however, the absence of such a decision militates against that finding when, in addition, there have been no cases in this Circuit "foreshadow(ing)" a ruling on the issue, nor many cases in other circuits taking a certain stand.

*Molinelli*, 901 F.2d at 15, *citing Shabazz v. Coughlin*, 852 F.2d 697, 701 (2d Cir.1988).

The right to be free from a sexually hostile learning environment created by peer-on-peer sexual harassment was not clearly established under Title IX. The 'contours' of such a right were sufficiently ambiguous so that, even if it is found that the Defendants violated this right, it was reasonable for the Defendants not to be aware that what they were doing violated that right.

### III. CONCLUSION

For the reasons stated herein, this Court DENIES the Defendants' motion for summary judgment as to the Plaintiff's Title IX claims, and GRANTS the Defendants' motion for summary judgment as to the Plaintiff's 42 U.S.C. § 1983 claims, Dismissing such claims with prejudice.

**IT IS SO ORDERED.**